796 P.2d 252

STATE of New Mexico, Plaintiff–Appellant,

v.

Jose Mario VILLANUEVA, Defendant–Appellee.

Nos. 11511, 11560.

Court of Appeals of New Mexico.

April 24, 1990.

Certiorari Denied June 27, 1990.

Hal Stratton, Atty. Gen., and Margaret B. Alcock, Asst. Atty. Gen., Santa Fe, for plaintiff-appellant.

Timothy M. Padilla, Timothy M. Padilla & Associates, P.C., Albuquerque, for defendant-appellee.

## OPINION

DONNELLY, Judge.

Both the state and defendant pursue interlocutory appeals from an order granting in part and denying in part defendant's motion for suppression of evidence seized at a border checkpoint. We discuss: (1) whether the border patrol's stop of a commercial bus in which defendant was a passenger, and the use of a narcotics detection dog to sniff the bus luggage compartments, constituted an illegal search; (2) whether the court erred in suppressing baggage claim tickets found as a result of a search of the defendant; and (3) whether the trial court erred in denying defendant's motion to suppress evidence obtained following a warrantless search of defendant's luggage. We affirm the rulings of the trial court.

On June 11, 1988, defendant was a passenger on a bus that was travelling north into New Mexico from El Paso, Texas. The bus was stopped at a border patrol checkpoint near Oro Grande, in Otero County. In accordance with routine procedure, border patrol agents checked the citizenship of the passengers and obtained permission from the bus driver to open the luggage compartments on the bus. The agents then used a trained dog to sniff the luggage area for the presence of humans or possible narcotics. The dog reacted positively to two pieces of luggage which the bus driver indicated had been given to him by defendant. A third suitcase, a blue bag, was also pointed out by the driver as belonging to defendant.

A border patrol agent asked defendant if the luggage in question belonged to him. Defendant denied having any luggage on the bus. Defendant was then asked if he would mind exiting the bus and stepping inside the checkpoint trailer so the officers could talk to him further. Inside the trailer, defendant again denied having any luggage. The officers asked defendant to empty his pockets. An officer also told defendant to remove his shoes. Defendant took off his left shoe and shook it. The

officer then said "[T]ake off your right shoe." Defendant reluctantly complied and three baggage claim tickets fell out of his shoe. Defendant immediately covered up the tickets with his foot. An officer told him to move his foot and retrieved the tickets. Examination of the tickets indicated that they matched those on the luggage alerted to by the dog. At this point the agents summoned a state police officer; the three bags were removed from the bus; and it was allowed to leave without defendant.

After the arrival of the state police officer, defendant was read his *Miranda* rights, and he requested to speak with an attorney. Without obtaining a search warrant, the agents proceeded to open and search the three items of luggage. The search revealed approximately 40 pounds of marijuana contained inside the luggage. Defendant was then arrested and charged with possession of marijuana with intent to distribute. After defendant was arrested, the officers continued questioning defendant. Defendant told the officers that he had carried the marijuana across the river in burlap bags, that he had purchased the suitcases to transport the contraband and had boarded the bus in El Paso en route to Denver, Colorado.

Defendant filed a motion to suppress evidence of the three baggage claim tickets, the marijuana found in the luggage identified by numbers matching those of the claim tickets, and the oral statements made by defendant after he requested the opportunity to speak to an attorney. Following an evidentiary hearing, the court entered an order suppressing evidence of the baggage claim tickets and defendant's oral statements, but refused to rule that the dog sniff was illegal or to grant defendant's motion to suppress the marijuana discovered in the suitcases. The state does not challenge on appeal the trial court's order suppressing defendant's oral statements given after he indicated that he wished to speak to an attorney.

## I. PROPRIETY OF CANINE DETECTION

■ Defendant asserts that the action of the officers in subjecting his luggage to examination by a trained drug detection dog, without any showing of probable cause or exigent circumstances, constituted an illegal search contrary to the fourth amendment.

The United States Supreme Court has addressed the fourth amendment status of a canine sniff examination in *United States v. Place*, 462 U.S. 696, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). *Place* held that although an individual possesses a privacy interest in the contents of personal luggage that is protected by the fourth amendment, subjecting luggage or personal effects to examination by means of a dog sniff differs from other types of intrusions, and that "exposure of * * * luggage * * * located in a public place, to a trained canine —[does] not constitute a 'search' within the meaning of the Fourth Amendment." *Id.* at 707, 103 S.Ct. at 2644.

Other courts which have considered this issue have reached similar results. *See United States v. Stone*, 866 F.2d 359 (10th Cir.1989) (police use of narcotic's detection dog to sniff automobile held not to be illegal search); *United States v. MacDonald*, 670 F.2d 910 (10th Cir.), *cert. denied*, 459 U.S. 1015, 103 S.Ct. 373, 74 L.Ed.2d 508 (1982) (use of trained dog to sniff for contraband in area where officer and dog are not trespassing does not constitute an unreasonable search contrary to fourth amendment); *United States v. Venema*, 563 F.2d 1003 (10th Cir.1977) (the olfactory activities of a trained police dog legitimately on the premises held not to constitute a search); *United States v. Bronstein*, 521 F.2d 459 (2d Cir.1975), *cert. denied*, 424 U.S. 918, 96 S.Ct. 1121, 47 L.Ed.2d 324 (1976) (alert of trained dog to presence of possible narcotics held not to amount to search or seizure).

Additionally, like results have been upheld by appellate courts in Arizona and Hawaii. *State v. Martinez*, 26 Ariz.App. 210, 547 P.2d 62 (1976) (use of trained dog to sniff for possible marijuana was not search where vehicle was lawfully stopped); *State v. Snitkin*, 67 Haw. 168,

681 P.2d 980 (1984) (narcotics detection dog's sniff of a package held not to be a fourth amendment search). *See also State v. Sandoval,* 92 N.M. 476, 590 P.2d 175 (Ct.App.1979) (odor of controlled substance is evidence to establish probable cause for search of vehicle). *See generally,* Annotation, *Use of Trained Dog to Detect Narcotics or Drugs as Unreasonable Search in Violation of Fourth Amendment,* 31 A.L. R.Fed. 931 (1977). *Compare United States v. Beale,* 674 F.2d 1327 (9th Cir. 1982) (use of dog sniff to check luggage held to constitute search within meaning of fourth amendment but could be conducted without warrant subject to articulable, founded suspicion); *Horton v. Goose Creek Indep. School Dist.,* 690 F.2d 470 (5th Cir. 1982) (use of sniffer dog to check students in classroom violated fourth amendment); *United States v. Morales,* 714 F.Supp. 1146 (D.N.M.1989) (use of trained canine to sniff for contraband held improper where it intruded upon defendant's reasonable expectation of privacy); *People v. Evans,* 65 Cal.App.3d 924, 134 Cal.Rptr. 436 (1977) (dog search without prior knowledge or suspicion of presence of contraband held improper).

Border patrol agent Sanchez testified that the dog used to check the luggage compartment had over 200 hours of training, was taken to El Paso for additional training every two weeks, and had recently been recertified. We apply the rationale set forth in *Place* and *MacDonald* to the facts before us. We hold that the use of a trained narcotics detection dog, in an area where the officers and the animal have a right to be, for the purpose of sniffing for odor of narcotics or other contraband, does not constitute an illegal search. *See United States v. Venema; People v. Mayberry,* 31 Cal.3d 335, 644 P.2d 810, 182 Cal.Rptr. 617 (1982). We do not agree under the facts herein that we should adopt the rule urged by defendant that the use of a trained sniffer dog was proper only after officers had first formulated a reasonable, articulable suspicion of the presence of controlled substances. *See United States v. Beale,* 736 F.2d 1289 (9th Cir.) (J. Pregerson, dissenting), *cert. denied,* 469 U.S.

1072, 105 S.Ct. 565, 83 L.Ed.2d 506 (1984); *State v. Groves,* 65 Haw. 104, 649 P.2d 366 (1982). Our holding herein is limited to the particular facts of this case, where the subject search was conducted at a border checkpoint, and in the luggage common area, which was at some distance from the defendant. We do not decide whether use of a dog sniff in some other setting might require reasonable suspicion or a "lawful contemporaneous line of investigation," as required by other jurisdictions. We hold only that under the particular circumstances of this appeal, defendant's reasonable expectation of privacy was not violated.

The dog sniff took place at a border checkpoint and at a point when defendant's luggage was stored in the bus's general luggage compartment. Defendant contends the evidence at the hearing on the motion to suppress was insufficient to support the state's claim that the border patrol agents obtained the consent of the bus driver to open the door to the baggage compartment and to subject the luggage to examination by dog sniff. We disagree. The evidence indicates that the driver opened the luggage compartment for the officers and permitted the dog to sniff the airspace surrounding the closed luggage.

■ The government has a valid interest in maintaining border checkpoints in order to determine whether individuals may have entered the country illegally or are transporting contraband. *See United States v. Mendenhall,* 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980) (Powell, J. concurring); *United States v. Spetz,* 721 F.2d 1457 (9th Cir.1983); *People v. Matthews,* 112 Cal.App.3d 11, 169 Cal.Rptr. 263 (1980); *see also United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976). The evidence indicates that the bus was lawfully stopped at an established border patrol checkpoint within a reasonable proximity to the United States border. The facts also support a determination that the officers, aided by the sniffer dog, lawfully conducted a check of the common baggage compartment of the bus. Although individuals normally

possess an expectation of privacy in their closed items of luggage, *United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), no privacy right or reasonable expectation of privacy exists as to the airspace surrounding closed items of luggage when the police are lawfully in an area where they have a right to be and are acting in a lawful manner. *See United States v. Goldstein*, 635 F.2d 356 (5th Cir. 1981); *United States v. Venema; State v. Snitkin.*

Based upon the above authorities, we uphold the trial court's determination that the dog sniff of the closed luggage in the common baggage compartment of a common carrier did not violate a reasonable expectation of privacy on the part of defendant, and did not constitute a search within the meaning of the fourth amendment or article II, section 10 of the New Mexico Constitution. *See United States v. Place; State v. Snitkin.* The other issues raised by defendant concerning the validity of the dog sniff are without merit.

## II. PROPRIETY OF SEARCH OF DEFENDANT'S PERSON

In its order suppressing the luggage claim tickets, the trial court found that the state failed to carry its burden of establishing either a consent search or a search incident to a lawful arrest. Warrantless searches are permissible under the fourth amendment if they fall within one of the exceptions to the warrant requirement such as plain view, probable cause plus exigent circumstances, search incident to lawful arrest, consent, hot pursuit, and inventory searches. *See State v. Ruffino*, 94 N.M. 500, 612 P.2d 1311 (1980).

■ The state contends the trial court's suppression was error because the luggage claim tickets were found as a result of a search incident to a lawful arrest. The state argues that the evidence indicated that, when defendant was removed from the bus, his freedom of movement was restricted and he had been effectively placed under custodial arrest. *Boone v. State*, 105 N.M. 223, 731 P.2d 366 (1986). The state does not argue that the claim

tickets were seized as a result of a stop and frisk under authority of *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

The facts as presented do not conclusively support a determination that defendant had been either formally arrested or placed under de facto custodial arrest at the time he was subjected to a search of his person and the claim tickets seized. Nor do the facts conclusively indicate defendant voluntarily consented to the search of his person. An appellate court will not disturb a trial court's grant or denial of a motion to suppress unless it appears that the determination of the court is not supported by the evidence or was erroneously premised. *State v. Segotta*, 100 N.M. 18, 665 P.2d 280 (Ct.App.), *overruled on other grounds*, 100 N.M. 498, 672 P.2d 1129 (1983); *see also Rodriguez v. State*, 91 N.M. 700, 580 P.2d 126 (1978). The standard of review on appeal is whether the law was correctly applied to the facts, viewing such facts and all reasonable inferences in a light most favorable to the prevailing party, and disregarding all inferences or evidence to the contrary. *State v. Bidegain*, 88 N.M. 466, 541 P.2d 971 (1975); *see State v. Keyonnie*, 91 N.M. 146, 571 P.2d 413 (1977).

After the bus driver identified defendant as the owner of the luggage, border patrol agent Sanchez asked defendant if he would mind stepping off the bus and entering the trailer so they could talk further. Inside the trailer, Sanchez told defendant he wanted to view defendant's personal belongings and defendant emptied his pockets and then removed his shoes. The claim tickets fell from defendant's right shoe.

At the suppression hearing Sanchez testified that defendant had not been placed under formal arrest when he was brought into the border patrol trailer. Sanchez stated, however, that defendant had been detained and was not free to leave. The record indicates that, after arrival of the state police officer, the officer spoke to defendant and asked him if they could open the bags. The defendant responded "I don't know. What's gonna happen? How long am I going to be held in jail for this?" Defendant also stated that he "wanted to

talk to a lawyer." The officer then told him "I haven't placed you under arrest yet. You don't have a right to a lawyer yet." At this point, the officers opened the three suitcases.

Defendant contends that he was searched by the officers prior to being formally arrested and that the search of his person and seizure of the baggage claim tickets was an improper warrantless search. The facts detailed above support a reasonable inference that defendant was merely temporarily detained for investigatory purposes and had not yet been placed under arrest at the time he was subjected to a search of his person. Although the evidence was subject to conflicting inferences, the state had the burden of establishing that a warrantless search of defendant's person was consensual, a search incident to arrest, or was carried out pursuant to some other clearly delineated exception. *See State v. Valencia Olaya*, 105 N.M. 690, 736 P.2d 495 (Ct.App.1987) (burden on state to show consent given without duress, coercion, or other factors vitiating voluntary nature of consent).

The record sustains the trial court's determination that the state failed to meet its burden that the search of defendant's person was consensual or made incident to defendant's arrest. *State v. Harrison*, 95 N.M. 383, 622 P.2d 288 (Ct.App.1980) (search not justified as search incident to arrest where defendant was not arrested until after search was carried out and the discovery of controlled substance); *United States v. Recalde*, 761 F.2d 1448 (10th Cir. 1985) (defendant's purported consent to search held not established where it was obtained after illegal arrest).

Whether consent to search was voluntary or was a product of duress or coercion, express or implied, is a question of fact to be determined from the totality of the circumstances. *State v. Cohen*, 103 N.M. 558, 711 P.2d 3 (1985), *cert. denied*, 476 U.S. 1158, 106 S.Ct. 2276, 90 L.Ed.2d 719 (1986). *See also State v. Anderson*, 107 N.M. 165, 754 P.2d 542 (Ct.App.1988) (voluntariness of consent to search is a factual issue). In *Cohen*, our supreme court discussed the three-tiered test for determining whether a person's actions support a finding that the search in question was consensual. *Cohen*, relying on *Recalde*, held that in order to support a finding that a search was validated by defendant's consent, the court must ascertain that (1) the evidence supports a finding that defendant's actions authorizing the search were specific and unequivocal; (2) the consent was given without duress or coercion; and (3) the evidence is sufficient to overcome the presumption against waiver of defendant's constitutional rights. *State v. Cohen*, 103 N.M. at 563, 711 P.2d at 8.

■■■■ Where the evidence is conflicting, a reviewing court will not reweigh the evidence presented before the trial court. Here the trial court could reasonably find that defendant had not voluntarily consented to the search of his person and that he had not yet been placed under formal or de facto arrest when he was subjected to a search of his clothing. *See State v. Anderson*. The state bears the burden of proof to establish that a consent to search was given voluntarily by clear and convincing evidence. The fact that incriminating evidence is obtained as a result of an improper search and seizure does not validate the result of an otherwise unlawful search. *State v. Gorsuch*, 87 N.M. 135, 529 P.2d 1256 (Ct.App.1974). We affirm the trial court's ruling suppressing the baggage claim tickets resulting from the search of defendant's person.

## III. SEARCH OF DEFENDANT'S LUGGAGE

The trial court denied defendant's motion to suppress evidence of the marijuana found in the suitcases removed from the bus. Defendant argues the trial court erred in failing to suppress evidence obtained from this warrantless search. Defendant does not dispute, however, that after the dog alerted to the bags in question, defendant denied having any luggage on the bus and that after he accompanied the officers inside the trailer, he again denied having any luggage. Under these cir-

cumstances, we find no error in the trial court's ruling denying suppression of the evidence found in the suitcases.

The state asserts that defendant had no standing to object to a generalized dog sniff of the luggage storage area of a common carrier on which he was traveling as a passenger. In ascertaining the standing of an individual to challenge the propriety of a search, the focus is on the person's legitimate expectations of privacy. *United States v. Rios*, 611 F.2d 1335 (10th Cir. 1979). Where an individual denies ownership or a possessory interest in property, such denial may deprive him of any justified expectation of privacy in the object. *See United States v. Hilton*, 619 F.2d 127 (1st Cir.), *cert. denied*, 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980) (defendant's denial of ownership of suitcase deprived him of standing to object to its search); *United States v. Kendall*, 655 F.2d 199 (9th Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982) (defendant who disclaims ownership of property surrenders reasonable expectation of privacy therein); *United States v. Taylor*, 473 F.Supp. 65 (E.D.Pa.1979) (passenger who does not claim interest in property seized, has no legitimate expectation of privacy).

Similar rulings have been adopted by state appellate courts which have considered this same issue. *State v. Morrow*, 128 Ariz. 309, 625 P.2d 898 (1981) (upholding search of attache case where defendant denied ownership); *State v. Swank*, 399 So.2d 510 (Fla.Dist.Ct.App.1981) (disclaimer of ownership of duffel bag obviated reasonable expectation of privacy therein); *State v. Mahone*, 67 Haw. 644, 701 P.2d 171 (1985) (verbal denial of ownership of bag vitiated reasonable expectation of privacy); *Menefee v. State*, 640 P.2d 1381 (Okla.Crim. App.1982) (disclaimer of ownership precludes later claim that search was improper). *See also State v. Clark*, 105 N.M. 10, 727 P.2d 949 (Ct.App.1986) (individual's actions may indicate he no longer has a reasonable privacy expectation). *But see People v. Cameron*, 73 Misc.2d 790, 342 N.Y. S.2d 773 (1973) (disclaimer of ownership did not constitute abandonment where satchel was located in automobile); *State v. Casey*, 59 N.C.App. 99, 296 S.E.2d 473 (1982) (defendant's denial of ownership of bags he was carrying, held not to be an abandonment since he retained a right of possession and control).

■ The standing of a defendant to object to a search generally must be grounded upon a showing of a personal or possessory interest in either the place searched or the property seized. *Brown v. United States*, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); *State v. Waggoner*, 97 N.M. 73, 636 P.2d 892 (Ct.App.1981); *State v. Ellis*, 88 N.M. 90, 537 P.2d 698 (Ct.App. 1975), *rev'd in part on other grounds*, *State v. Espinosa*, 107 N.M. 293, 756 P.2d 573 (1988). Since it is undisputed that defendant denied any ownership or interest in the luggage, any reasonable expectation of privacy in the property was obviated, and it was not error for the trial court to deny defendant's motion to suppress the contents of the three bags.

■ Lastly, defendant argues that the search of the blue suitcase was improper because the canine only alerted to his two other pieces of luggage, and no probable cause existed to open and search the blue suitcase. We disagree. Border patrol agent Sanchez testified that although the canine initially alerted to two pieces of luggage, the canine later alerted to the general area of all three items. Moreover, defendant denied that any of the luggage was his at the time it was taken from the bus and searched. Thus, we determine that the search of the blue suitcase was not improper.

Because we find that the search of defendant's luggage was lawful, we do not address the other arguments raised by the state. For the above-stated reasons, the trial court is affirmed and this case is remanded for further proceedings consistent with this opinion.

IT IS SO ORDERED.

ALARID and APODACA, JJ.; concur.