2008-NMSC-014

178 P.3d 165

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Jerry HAND, Defendant–Respondent.**

**No. 30,193.**

Supreme Court of New Mexico.

Feb. 7, 2008.

Certiorari Denied, No. 30,193, Feb. 20, 2008.

cumstances existed to justify dispensing with the knock-and-announce rule. *State v. Hand,* No. 25,931, memo. op. at 10 (N.M.Ct. App. Nov. 6, 2006). Based on the facts as discussed below and our opinion in *State v. Johnson,* 2006–NMSC–049, 140 N.M. 653, 146 P.3d 298, we hold that the search was constitutional because, under the totality of the circumstances, the agents' wait of ten to twenty seconds was a reasonable length of time for them to conclude that they were being denied admission. Because we conclude that the agents complied with the rule, we do not address whether exigent circumstances may have existed.

## I. BACKGROUND

{2} On December 28, 2004, Border Operations Task Force (BOTF) agents obtained a search warrant for Defendant's property in Luna County, New Mexico, that authorized their seizure of controlled substances, materials related to drug trafficking, manufacturing, or distribution, and stolen or illegal firearms. In the affidavit supporting the search warrant, BOTF Agent Eddie Pacheco stated that the BOTF agents had previously conducted three controlled buys of methamphetamine (meth) from one of three trailers located on Defendant's property: a camping trailer measuring eight feet by twenty-one feet.[1] He later testified that, prior to the search warrant's execution, a confidential informant had told the BOTF agents that Defendant was a heavy meth user who kept a gun either in the trailer or on his person. Based on the confidential informant's statements, Agent Pacheco was concerned for the BOTF agents' safety while executing the warrant because he knew through training and experience that meth users are often paranoid, dangerous, and apt to carry weapons to protect themselves.

{3} The BOTF agents executed the warrant at 7:15 a.m. on Wednesday, December 29, 2004. They knew, through training and experience, that quick entry into the trailer was imperative to protect themselves and to avoid the destruction of evidence. Agent

Gary K. King, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Law Offices of Nancy L. Simmons, P.C., Nancy L. Simmons, Albuquerque, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} Defendant Jerry Hand was charged with trafficking (manufacturing) methamphetamine; possession of methamphetamine; manufacture, possession, or transfer of drug precursors; and possession of drug paraphernalia. He moved to suppress the evidence against him on the ground that law enforcement agents had violated the knock-and-announce rule when executing a search warrant on his property. The district court granted Defendant's motion, and the State appealed. The Court of Appeals affirmed in a memorandum opinion, concluding that the search was unconstitutional because the agents did not wait long enough before attempting to force entry and no exigent cir-

---

1. Defendant's camping trailer had only two doors, both facing south, and they are referred to hereinafter as the "east door" and the "west door."

Pacheco initiated the search by banging on the trailer's east door and shouting, "Police. Search Warrant. Open the Door!" This continued for ten to twenty seconds, during which time Agent Pacheco could hear someone moving within the trailer, but could hear neither movement toward the door nor a verbal response to his shouts. During this initial ten to twenty second period, Agent Pacheco announced the agents' identity and purpose approximately twenty times. After gaining no response, the BOTF agents began their attempt to force entry into Defendant's trailer. They tried first to breach the east door, but could not force it open. Then, they moved to the west door and tried again, but were likewise unsuccessful in gaining entry. Failing to breach the west door, the BOTF agents returned to the east door, where one of the agents broke the door's window in an attempt to force entry. Through the broken window, Agent Pacheco could see Defendant standing inside the trailer and ordered him to open the door. After several minutes of delay, Defendant unlocked the door and admitted the BOTF agents. Upon entry to the trailer, the BOTF agents found evidence of a working meth lab, which caused them to evacuate the trailer and turn the search over to the New Mexico State Police Clandestine Methamphetamine Lab Team. While searching the trailer, the Lab Team discovered numerous items used to manufacture meth, as well as a loaded .38 caliber handgun in the part of the trailer where Agent Pacheco had heard movement while knocking and announcing.

{4} Defendant filed a motion to suppress all evidence seized as a result of the search, claiming among other things that the BOTF agents did not allow proper time for him to answer the door, in violation of the United States and New Mexico Constitutions, as well as the Court of Appeals' then-controlling opinion in *State v. Johnson (Johnson I)*, 2004–NMCA–064, 135 N.M. 615, 92 P.3d 61, *rev'd* 2006–NMSC–049, 140 N.M. 653, 146

P.3d 298. In *Johnson I*, the Court of Appeals concluded that law enforcement officers had violated the knock-and-announce rule when they began to force entry into the place to be searched after only ten seconds of knocking and announcing. *Id.* ¶ 15. The Court also determined that no exigent circumstances existed to justify the officers' noncompliance. *Id.* ¶ 12. In this case, the district court issued detailed findings of fact and conclusions of law that relied on *Johnson I* to conclude that the BOTF agents' ten to twenty second wait before attempting to force entry was unreasonable and that no exigent circumstances existed. Based on those conclusions, the district court granted Defendant's motion. The State appealed.

{5} After the district court had entered its ruling, this Court reversed *Johnson I*, holding that the officers had complied with the knock-and-announce rule after a wait of only ten seconds. *State v. Johnson (Johnson II)*, 2006–NMSC–049, ¶ 1, 140 N.M. 653, 146 P.3d 298. The Court of Appeals affirmed the district court's ruling in a memorandum opinion, noting that *Johnson II* did not alter its conclusions that the agents' ten to twenty second wait was unreasonable and that no exigent circumstances existed. *Hand*, No. 25,931, memo. op. at 9–10. We granted certiorari to determine the constitutionality of the search and whether the evidence was properly suppressed.[2] Holding that the search was constitutional based on the totality of the circumstances and the holding in *Johnson II*, we reverse the Court of Appeals and remand to that Court to consider an issue that it previously did not reach.

## II. STANDARD OF REVIEW

{6} "The standard of review for suppression rulings is whether the law was correctly applied to the facts, viewing them in a manner most favorable to the prevailing party." *State v. Lopez*, 2005–NMSC–018, ¶ 9, 138 N.M. 9, 116 P.3d 80 (quoted authority omitted). We review the district court's

---

2.  The United States Supreme Court has held that suppression is not the proper remedy for violations of the knock-and-announce rule under the Fourth Amendment. *Hudson v. Michigan*, 547 U.S. 586, 126 S.Ct. 2159, 165 L.Ed.2d 56 (2006). Because neither party briefed the effect of *Hud-*

son on New Mexico's knock-and-announce jurisprudence and because we conclude that the district court erroneously suppressed the evidence, we leave the question of *Hudson's* effect to be decided another day.

"purely factual assessments to determine if the fact-finder's conclusion is supported in the record by substantial evidence." *State v. Attaway*, 117 N.M. 141, 144, 870 P.2d 103, 106 (1994). Then, while "[d]eferring to the trial court with respect to factual findings and indulging all reasonable inferences in support of the trial court's decision ... we review the constitutional question of the reasonableness of a search and seizure de novo." *Johnson II*, 2006–NMSC–049, ¶ 9, 140 N.M. 653, 146 P.3d 298.

## III. DISCUSSION

■■■ {7} " 'In New Mexico, law enforcement officers are constitutionally required to knock and announce their identity and purpose, and wait a reasonable time to determine if consent to enter will be given prior to forcefully entering a [dwelling] in order to execute a search warrant.' " *Id.* ¶ 10 (quoting *State v. Vargas*, 1996–NMCA–016, ¶ 5, 121 N.M. 316, 910 P.2d 950) (alteration in original). "Refusal to consent to enter does not have to be explicit." *Id.* ¶ 17. Instead, " '[i]f the occupants do not admit the officers within a reasonable period of time ..., the officers may be deemed to be constructively refused admittance, and they may then enter by force.' " *Id.* (quoting *United States v. Jenkins*, 175 F.3d 1208, 1213 (10th Cir.1999)). There are no bright line rules establishing how long law enforcement officers must reasonably wait to determine that they have been denied consent to enter. *Id.* ¶ 13. Instead, in each case, we consider the totality of the circumstances to determine whether the officers' wait was reasonably long enough to infer that they were being denied consent to enter. *Id.*

{8} *Johnson II* presented us with similar facts to those that we encounter here, *see id.* ¶¶ 2–5, and in that case we concluded that a ten-second wait was a reasonable length of time for law enforcement to believe that they were denied admission, *id.* ¶ 1. In *Johnson II*, law enforcement officers executed a search warrant on the defendant's motel room at 6:15 a.m. on a Saturday. *Id.* ¶ 2. The motel room was small, approximately twelve feet by twelve feet, and could be walked through in only a few steps. *Id.* ¶ 5.

The officers knocked and announced for at least ten seconds, during which time they received no response and heard no movement within. *Id.* When the officers finally forced their way into the motel room, they found the defendant standing just inside the door, along with meth and the makings of a meth lab in the bathroom. *Id.* ¶ 3. Reversing the Court of Appeals' determination that the officers did not wait long enough before forcing entry, this Court explained that, when viewed in the totality of the circumstances, "particularly the *small size of the motel room* and the fact that *[d]efendant did not respond in any way,* ... it was reasonable for the officers to believe that they were being denied entrance after at least ten seconds of repeated knocking and announcing their purpose and identity." *Id.* ¶ 17 (emphasis added).

{9} In this case, the BOTF agents served the search warrant on Defendant's trailer, which was a small space like the motel room in *Johnson II*. The BOTF agents knocked and announced for somewhere between ten and twenty seconds—longer than the officers' ten-second knock-and-announce period in *Johnson II*. Prior to attempting forced entry, both the officers in *Johnson II* and the BOTF agents in this case received no verbal response to their shouts. Furthermore, the facts of this case present an additional element not found in *Johnson II* that impacts the constructive refusal analysis: officer perception of movement within the place to be searched after knocking and announcing. Unlike the officers in *Johnson II*, who heard nothing from inside the motel room, Agent Pacheco heard movement within Defendant's trailer but no movement toward the door.

{10} We have never considered how an officer's perception of movement within the place to be searched, after knocking and announcing, affects the constructive refusal analysis. Other jurisdictions, however, have relied on such perceptions to support the conclusion that officers were constructively denied admission. *See United States v. Bonner*, 874 F.2d 822, 825–26 (D.C.Cir.1989) (constructive refusal after eleven to twelve second wait supported by sounds of movement away from the door); *McClure v. Unit-*

*ed States,* 332 F.2d 19, 21–22 (9th Cir.1964) (constructive refusal after four to five seconds when officers heard someone running away from door); *Commonwealth v. Dial,* 445 Pa. 251, 285 A.2d 125, 127 (1971) (constructive refusal based on sound of running within residence but no attempt made to answer door); *Braham v. State,* 724 So.2d 592, 593, 594 (Fla.Dist.Ct.App.1998) (constructive refusal after five to ten seconds based on observation of movement within but no verbal response); *Witcher v. State,* 629 So.2d 71, 76–77 (Ala.Crim.App.1993) (constructive refusal after fifteen seconds when officers had heard footsteps moving through residence).

■■■ {11} We accept the reasoning that an officer's perception of movement within the place to be searched, after knocking and announcing, is a significant component of the constructive refusal analysis. Nonetheless, we stress that a reviewing court must consider the totality of the circumstances in any given case to decide whether the officers waited a reasonable length of time to conclude that they were being denied admission. *Johnson II,* 2006–NMSC–049, ¶ 13, 140 N.M. 653, 146 P.3d 298. In some cases, it may be determined that officers were not constructively refused admission, even though they perceived movement within the place to be searched after knocking and announcing, based on the totality of the circumstances. In this case, however, the fact that Agent Pacheco heard Defendant moving back and forth within the trailer but never toward the door further justified the BOTF agents' belief that they were being denied admission after waiting ten to twenty seconds, based on the size of the trailer and Defendant's lack of verbal response.

■■■ {12} Both the district court and the Court of Appeals concluded that the BOTF agents did not comply with the knock-and-announce rule. Under New Mexico law, when law enforcement officers fail to comply with the rule, their noncompliance may be excused if exigent circumstances exist. *Lopez,* 2005–NMSC–018, ¶ 10, 138 N.M. 9, 116 P.3d 80. Thus, after finding a knock-and-announce violation, the lower courts proceeded to consider whether exigent circumstances existed to justify dispensing with the rule. Because we have determined that the BOTF agents complied with the knock-and-announce rule, however, it is unnecessary for us to consider the exigent circumstances argument, and we do not do so here.

## IV. CONCLUSION

{13} We conclude that the BOTF agents complied with the knock-and-announce rule because, under the totality of the circumstances, their ten to twenty second wait after knocking and announcing was a reasonable length of time for them to discern that they were being denied admission. Thus, we reverse the Court of Appeals. The State raised another issue in its original appeal, which the Court of Appeals did not address. Namely, the State asked the Court to consider whether some of the evidence seized from Defendant's trailer was admissible despite the State's failure to preserve it. The Court of Appeals did not address the preservation of evidence issue because it concluded that the evidence was properly suppressed on knock-and-announce grounds. Having reversed its knock-and-announce ruling, we remand to the Court of Appeals to consider the remaining issue.

{14} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PETRA JIMENEZ MAES, RICHARD C. BOSSON and CHARLES W. DANIELS, Justices.